EDP:ADW
F.# 2021R00452

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - -X

UNITED STATES OF AMERICA

- against -

MAYRA ALEJANDRA RODRIGUEZ, and
JOSE HECTOR GARZA SALINAS,
,
               Defendants.

- - - - - - - - - - - - -X

COMPLAINT AND
AFFIDAVIT

(T. 21, U.S.C., § 846))

22-MJ-417

EASTERN DISTRICT OF NEW YORK, SS:

      MICHAEL SEGAL, being duly sworn, deposes and states that he is a Special Agent with the Internal Revenue Service ("IRS"), duly appointed according to law and acting as such.

      In or about April 2022, within the Eastern District of New York and elsewhere, the defendants MAYRA ALEJANDRA RODRIGUEZ and JOSE HECTOR GARZA SALINAS, together with others, did knowingly, intentionally and unlawfully conspire to distribute and possess with intent to distribute one or more substances containing 400 grams or more of a substance containing fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841.

      (Title 21, United States Code, Section 846)

The source of your deponent's information and the grounds for his belief are as follows:[1]

## INTRODUCTION

1. I am a Special Agent with the Internal Revenue Service ("IRS") and have been since 2018. In my capacity as an IRS Special Agent, I am responsible for conducting and assisting in investigations into the activities of individuals and criminal groups responsible for federal narcotics offenses, narcotics trafficking into the United States and money laundering offenses. I have participated in investigations involving arrest warrants, and the use of surveillance, confidential informants, cooperating defendants and undercover operations. I have also received training to (a) review and analyze taped conversations and records of drug traffickers and money launderers and (b) debrief cooperating drug traffickers and money launderers. Through my training, education and experience, I have also become familiar with (a) the manner in which illegal drugs are imported and distributed; (b) the method of payment for such drugs; and (c) the efforts of persons involved in such activity to avoid detection by law enforcement, such as through the laundering of monetary instruments and the concealment of evidence of crimes.

2. I am familiar with the facts and circumstances set forth below from my participation in the investigation described herein. The facts set forth in this affidavit are based, in part, on information that I have learned from the review of written documents prepared by, and conversations with, members of the Drug Enforcement Administration ("DEA") and IRS

---

[1] Because the purpose of this affidavit is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

2

and other law enforcement agencies and investigators; surveillance; and my review of documents obtained by subpoena. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## PROBABLE CAUSE TO ARREST THE DEFENDANTS

3. On or about March 22, 2022, a confidential source (hereinafter, "CS-1")[2] advised law enforcement that he/she had recently been in contact with a person ("Person-1") who was interested in selling large quantities of narcotics, including fentanyl and fentanyl-laced pills. Person-1 stated that he could provide multiple kilograms of fentanyl at an approximate price of $29,000 per kilogram, as well as thousands of fentanyl pills for $6 per pill. Person-1 also indicated that he was looking for someone who could help him launder money by picking up narcotics proceeds in Georgia and delivering the money to an associate in Mexico.

4. On or about March 25, 2022, Person-1 informed CS-1 that Person-1 was in the process of sending several kilograms of fentanyl to the New York City area. Person-1 asked CS-1 if CS-1 had access to a garage that could be used by a drug courier to unload the fentanyl from a concealed compartment within the vehicle. CS-1 responded that he could help Person-1 with this as long as CS-1 had a few days of advance notice.

---

[2] CS-1 has been working with the DEA and IRS for approximately three years after having been arrested in connection with drug charges. CS-1's information has proven to be reliable in this investigation and his previous cooperation has resulted in the discovery of several narcotics trafficking operations throughout the United States and Mexico. In 2020, CS-1 pleaded guilty to a count of narcotics trafficking conspiracy, pursuant to a cooperation agreement. CS-1 continues to cooperate with law enforcement authorities pursuant to his cooperation agreement, with the hope that CS-1 will receive leniency at sentencing.

5. On or about April 3, 2022, Person-1 informed CS-1 that a driver with approximately six kilograms of fentanyl would be arriving in the New York City area within a few days. CS-1 told Person-1 that CS-1 had access to a residential home in Brooklyn that could be used to unload the drugs and that he/she preferred for Person-1's associate to meet CS-1 at a prearranged meeting location before driving together to the residence. Person-1 agreed to this arrangement and further told CS-1 that Person-1 had an associate in the New York City area who could sell multiple kilograms of cocaine to CS-1 if CS-1 was so interested.

6. Person-1 further told CS-1 that Person-1's cousin—later identified as defendant MAYRA ALEJANDRA RODRIGUEZ—would be flying to New York City in the coming days. Person-1 asked CS-1 if CS-1 could pick RODRIGUEZ up at John F. Kennedy International Airport and drive her to a nearby hotel. Person-1 also told CS-1 that if CS-1 decided to purchase cocaine or fentanyl, then CS-1 could give payment directly to RODRIGUEZ.

7. On or about April 5, 2022, Person-1 told CS-1 that RODRIGUEZ would arrive that day at about 10:30 p.m. Person-1 also said that RODRIGUEZ would contact CS-1 once she arrived. A short time later, RODRIGUEZ called CS-1, said that she had arrived, and provided both her location and a physical description of what she was wearing. CS-1 told RODRIGUEZ that CS-1's associate ("CS-2")[3] would be there shortly in a car to pick up

---

[3] CS-1's "associate" was another confidential source working with law enforcement (hereinafter, "CS-2"). In 2018, CS-2 was arrested in the Eastern District of New York pursuant to a complaint charging him/her with conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, in violation of Title 21, United States Code, Section 846. CS-2's information has proven reliable and been corroborated by independent evidence including surveillance, phone records, vehicle registration records and controlled narcotics purchases. CS-2 is cooperating with law enforcement authorities with the hope that CS-2 will be able to plead guilty pursuant to a cooperation agreement and receive leniency at sentencing.

RODRIGUEZ.  CS-2 then arrived at the airport, picked up RODRIGUEZ, and drove her to a hotel in Queens, New York.

8. Afterward, CS-1 informed Person-1 that RODRIGUEZ had arrived at the hotel safely.  Person-1 reminded CS-1 that Person-1 had cocaine available to purchase if CS-1 was interested.  Person-1 also agreed to give CS-1 a sample of the cocaine first.  Person-1 further stated that the vehicle carrying several kilograms of fentanyl would be arriving in the New York City area the next day.

9. Contrary to Person-1's statement that the fentanyl-laden car would be arriving the next day, the car did not arrive at that time.  Instead, in the following week, Person-1 and CS-1 communicated several times regarding the arrival of the car.  Ultimately, Person-1 informed CS-1 that the car would arrive on April 12, 2022.

10. On the morning of April 12, 2022, Person-1 told CS-1 that the vehicle would arrive in the late morning or the early afternoon.  Person-1 asked CS-1 to arrange for someone to pick up RODRIGUEZ from her hotel in Queens and to bring her to an agreed-upon meeting location in Staten Island.  Person-1 said that RODRIGUEZ would pay the driver of the vehicle for the fentanyl.  At approximately 1:00 p.m., CS-2 picked up RODRIGUEZ from the hotel and drove her to the meeting spot, which was the parking lot of a store in Staten Island.  A short time later, the driver of the vehicle—later identified as defendant JOSE HECTOR GARZA SALINAS—called CS-1 and asked CS-1 to text the address of the meeting location.  CS-1 texted SALINAS the address.  SALINAS also told CS-1 that SALINAS was driving a 2019 blue Toyota Camry.

11. Law enforcement observed SALINAS arrive at the meeting location in a blue Toyota Camry.  After SALINAS arrived, he called CS-1 to state that he had arrived.  CS-1

told SALINAS that his associate (i.e., CS-2) was parked in the area in a white BMW sedan. At that point, SALINAS drove his vehicle towards CS-2's vehicle, parked, and approached CS-2. After SALINAS started to speak to CS-2 and RODRIGUEZ through the window of CS-2's vehicle, law enforcement arrested SALINAS and RODRIGUEZ. At the time of the arrests, there were two other passengers in the blue Toyota Camry that SALINAS had been driving, a woman seated in the front passenger seat and a man seated in the rear.

12. Agents searched the interior of the blue Toyota Camry. They found inside of a duffel bag in the rear passenger area approximately six kilograms of a powdery substance wrapped in black plastic. The substance later tested positive for the presence of fentanyl.

WHEREFORE, your deponent respectfully requests that the defendants MAYRA ALEJANDRA RODRIGUEZ and JOSE HECTOR GARZA SALINAS be dealt with according to law.

Dated: Brooklyn, New York
April 13, 2022

S/ Michael Segal
MICHAEL SEGAL
Special Agent
Internal Revenue Service

Sworn to before me by telephone this
13th day of April, 2022

Roanne L. Mann
THE HONORABLE ROANNE L. MANN
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK